IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CYNTHIA ADVANI MARSHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:20-cv-00442 |
| ) | |
| ) | |
| JOHN MARSHALL, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT BRENDA MARSHALL THOMPSON'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant, Brenda Marshall Thompson ("Thompson"), by counsel, sets forth the following in support of her Motion to Dismiss:

**INTRODUCTION**

This is a case alleging claims for conspiracy and intentional infliction of emotional distress against Thompson, her siblings, and Holmes, that is devoid of any facts—particularly as to Thompson. Indeed, Thompson is named in only three paragraphs of this 97-paragraph Complaint, and in none of those paragraphs are facts alleged as to her that could possibly support the causes of action levied against her. All told, the Complaint fails to sufficiently allege facts to allow the Court to infer that all elements of the causes of action exist, and the claims asserted against Thompson simply are not plausible.

**STANDARD OF REVIEW**

In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard governing the sufficiency of a complaint's allegations for purposes of Rule 12(b)(6) motions. The Supreme Court tightened the federal system's notice pleading standards,

holding that "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" Id. at 1965, fn. 3. Accordingly, a plaintiff has an obligation to plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. To avoid dismissal, plaintiffs must "nudge their claims across the line from conceivable to plausible." Id. at 1965. In other words, a plaintiff "must sufficiently allege facts to allow the Court to infer that **all elements** of each of his causes of action exist." Jordan v. Alternative Res. Corp., 458 F.3d 332, 344-45 (4th Cir. 2006) (emphasis added).

While it remains true that a court considering a Rule 12(b)(6) motion must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations," the court need not accept "legal conclusions drawn from the facts . . . unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mrkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In short, to survive a motion to dismiss, a Complaint must allege specific facts that could support a right to relief for the claims asserted.

### STATEMENT OF PERTINENT ALLEGATIONS

The Complaint is devoid of factual allegations as to Thompson that could support a plausible claim as the Complaint utterly fails to allege facts to allow the Court to infer that **all elements** of each of cause of action exist. To be sure, in only three paragraphs of the 97-paragraph Complaint is Thompson even mentioned. They are as follows:

> 2.     … Mr. Marshall's children – defendants John Marshall, Robert Marshall, Brenda Thompson, and Andrea Voehringer ("the Marshall defendants") – were

2

> furious at the remarriage of their father to Ms. Marshall, and treated her with hostility and contempt. …
>
> 4.   Defendants John Marshall, Robert Marshall, Brenda Marshall Thompson, and Andrea Marshall Voehringer are the adult children of Watson Marshall and his first wife, Annie Marshall. …
>
> 31.   On the occasion of Ms. Marshall's July 25 visit, defendant Brenda Marshall Thompson entered Mr. Marshall's room and saw Ms. Marshall with her husband. Ms. Thompson told Ms. Marshall that she was "not supposed to be there," following which Ms. Marshall was told to leave by a nurse. …

(Compl. ¶¶ 2, 4, 31.)

These three paragraphs are the only mention of Thompson. And while Plaintiff lumps all the siblings under the term "Marshall Defendants," Plaintiff fails to assert any fact specific allegations against Thompson.[1]

## ARGUMENT

**I.   Plaintiff's Claims Are Barred by Issue Preclusion and The Rooker-Feldman Doctrine.**

The gravamen of the Plaintiff's Complaint is that an "untenable and baseless [emergency protective] order" (the "Family Abuse EPO") was issued against her causing her eviction and deprivation of property in violation of her "constitutional rights." Every alleged "constitutional rights" violation she is claiming turns on her claim that the Family Abuse EPO was an "untenable and factually baseless order."

This premise is entirely without merit and factually inaccurate. Moreover, the very documents that plaintiff ignores and omits from her Complaint prove the opposite and confirm that the magistrate issued the Family Abuse EPO pursuant to and based on the criminal warrant

---

[1] For the sake of brevity, Thompson further adopts and incorporates by reference the "Summary of Allegations" provided in the Memorandum of Law in Support of Defendant John Marshall's Motion to Dismiss.

and affidavit of the victim Watson Marshall, by and through his POA. (See John Marshall Brief, Exhibit A.)

Critically, however, the plaintiff never sought to challenge, modify, or dissolve the Family Abuse EPO, which is fatal to her claims before this Court. Not only did she have the right to challenge an order that she now claims is "untenable and factually baseless," she was afforded an expedited process by which to do so. Specifically, the Family Abuse EPO served on Plaintiff specifically advises Plaintiff that she: "may at any time file a motion with the court requesting a hearing to dissolve or modify this order." (See John Marshall Brief, Exhibit A.) Pursuant to Va. Code §16.1-253.4(c), any "hearing on [such a] motion shall be given precedence on the docket of the court."

Here, the Family Abuse EPO was served on the plaintiff on the evening of Thursday, July 26, 2018. The plaintiff had the right to appear as early as the next morning on Friday, July 27, 2018, in the Henrico Juvenile and Domestic Relations Court when the court opened at 8:00 a.m. The plaintiff would have been provided form DC 630 to complete and could have been heard that day, given the statutory precedence afforded such motions. See "Motion to Amend or Review Order" at http://www.courts.state.va.us/forms/district/dc630.pdf.

Instead, the plaintiff did nothing and, as revealed by her Complaint, took no steps to avail herself of the opportunity to challenge, modify, or dissolve the order.[2]  Now, nearly two years later, plaintiff seeks to enlist this Court to review and reject the magistrate's decision to issue the Family Abuse EPO. The relief Plaintiff is requesting from this Court is barred by both the Rooker-Feldman Doctrine as well as the doctrine of issue preclusion.

---

[2] As a result, the Family Abuse EPO became final and was never appealed through the Virginia court system.

Specifically, this Court lacks jurisdiction to go behind the magistrate to reconsider, re-evaluate, and pass judgment on the merits of the Family Abuse EPO. The Rooker-Feldman doctrine prohibits federal district courts from reviewing state court final judgments because jurisdiction to do so lies only with the United States Supreme Court. Willner v. Frey, 243 F. App'x 744, 746 (4th Cir. 2007). The Rooker-Feldman doctrine barring federal district court's review of final state court orders applies specifically to:

> [C]ases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

In Bey ex rel. Graves-Bey v. Jacobs, 2014 WL 3871348 (E.D. Va. Aug. 6, 2014), this Court applied the Rooker-Feldman doctrine to bar its re-consideration of a protective order issued by the Prince William County Juvenile and Domestic Relations District Court, thereafter transferred to the City of Richmond Juvenile and Domestic Relations District Court. In that case, the plaintiffs argued that: (i) the protective order was put into place after an *ex parte* proceeding; (ii) the protective order was forged or fake; and (iii) the defendants were part of an alleged conspiracy against the plaintiffs in violation of, *inter alia*, plaintiff's constitutional rights. In determining that this Court lacked jurisdiction under the Rooker-Feldman doctrine, Judge Gibney found:

> The controlling question in a Rooker-Feldman analysis "is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision." Am. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003). To the extent that the plaintiffs are asking this Court to review and pass upon the merits of the protective order, this Court lacks jurisdiction to do so.

Id.

Judge Gibney's analysis is precisely on point here. The claims brought and the relief requested by Plaintiff require this Court to "review and pass upon the merits of the protective order." Id. As such, this Court lacks jurisdiction.

Equally important, the very issue that Plaintiff requires this Court to re-determine, namely, the merits of the Family Abuse EPO, is one that has already been decided in state court litigation in which the plaintiff had an opportunity to participate and challenge, but chose not to. Allowing her to re-litigate this issue now would violate the doctrine of issue preclusion. The doctrine of issue preclusion provides that: "[o]nce a court has decided an issue, it is 'forever settled between the parties.'" B&B Hardware, Inc. v. Hargis Indus., 575 U.S. 138, 147 (2015). The Fourth Circuit has identified the elements of issue preclusion to require that:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004).

Here, the issue plaintiff requires this Court to reassess—whether there was sufficient factual grounds upon which to issue the Family Abuse EPO—is precisely the issue determined by the magistrate. This issue has been fully resolved by the magistrate and was in fact essential to his decision to issue the Family Abuse EPO. Likewise, the magistrate's decision is now final having never been challenged or appealed by the Plaintiff.

Accordingly, the plaintiff's claims in this case are barred by the Rooker-Feldman Doctrine and the issue preclusion doctrine and this Court does not have jurisdiction to hear the same.

**II.     In Addition to Being Barred by Issue Preclusion and the Rooker-Feldman Doctrine, Plaintiff's Conspiracy and IIED Claims Fail.**

**A.     Plaintiff Fails to Allege Facts Sufficient to Support Any of Her Causes of Action for Conspiracy Against Thompson.**

Plaintiff fails to allege any facts against Thompson that could support a claim of conspiracy against her. Indeed, Plaintiff pleads no facts that would support any of the elements of conspiracy as to Thompson, and instead, only mentions Thompson in three of the 97 paragraphs in the Complaint.

To hold a private party liable under Section 1983, a plaintiff must allege facts sufficient to establish a private party engaged in a conspiracy with state actors to deprive plaintiff of her constitutional rights. See Dennis v. Sparks, 449 U.S. 24 (1980) (holding that private parties who conspired with a judge acting under color of state law could be liable under §1983 even though the judge was immune from damages liability). Thus, to adequately state a claim against Thompson, Plaintiff must allege more than conclusory statements of a conspiracy between defendant Thompson and defendant T. W. Holmes, the only state actor whose conduct plaintiff challenges—she must provide plausible facts supporting her allegations that a conspiracy existed. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Specifically, Plaintiff must set forth allegations of fact indicating that there was a "combination, agreement, or understanding among all or between any of the defendants." Ammlung v. City of Chester, 494 F.2d 811, 814 (3rd Cir. 1974). She must also assert allegations of fact that the private individual was a "willful participant" in joint action with the state or its agents. Dennis, 449 U.S. at 27-28. As the Eastern District of Virginia has explained

> [T]o state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state actor and private parties. To establish such a conspiracy, a plaintiff must show that defendants "acted jointly in concert and that some overt act was done in

furtherance of the conspiracy which resulted in ... deprivation of a constitutional right." In other words, plaintiffs must at least be able to show a deprivation of a constitutional right as a result of the alleged conspiracy. This is because "[t]he gist of the cause of action is the deprivation and not the conspiracy."

Shooting Point, L.L.C. v. Cumming, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003).

Likewise, to state a claim for common law conspiracy, a plaintiff must allege that the defendants came together by agreement to achieve a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." Bull v. LogEtronics, Inc., 323 F. Supp. 115, 131 (E.D. Va. 1971). To overcome a motion to dismiss, plaintiff "must at least plead the requisite concert of action and unity of purpose 'in more than mere conclusory language.'" Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499 (E.D. 2003).

Plaintiff provides absolutely no supporting factual allegations to support a conspiracy between Thompson and Holmes or to support a common law conspiracy. Her Complaint is entirely devoid of any allegations that a combination, agreement, or understanding existed between <u>any</u> or all of the defendants, nor does she allege that defendant Thompson was a willful participant in any such combination, agreement, or understanding or that there was any joint action by the defendants. Indeed, Plaintiff mentions Thompson in only three paragraphs of her 97-paragraph Complaint. Plaintiff must allege a factual basis in order to survive a motion to dismiss and her failure to do so is fatal to her conspiracy claims.

    **i.    Plaintiff Fails to State A Claim for Relief Against Thompson For Conspiracy to Cause Unconstitutional Eviction (Count III).**

In Count III of the Complaint, Plaintiff asserts that the defendants conspired to violate her "property interest in the possession of her home protected by the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983." (Compl. p. 26.)

8

To state a claim under §1983 claim, a plaintiff must plead that the defendant (1) acted under the color of state law (2) to deprive the plaintiff of a right provided to her by the U.S. Constitution. Brown v. Transurban USA Inc., 144 F. Supp. 3d 809, 833-34 (E.D. Va. 2015).

Here, Plaintiff alleges that the Marshall Defendants conspired with Defendant Holmes to "secure and solicit an unreasonable and baseless order," namely the Family Abuse EPO, which resulted in her eviction. (Compl. p. 26.) This conclusory allegation is without any factual support. Plaintiff does not assert anywhere in her complaint that any defendants made a factually baseless statement to obtain the Family Abuse EPO. The plaintiff likewise avoids pleading any facts showing that any of the statements set forth in the criminal complaint and affidavit upon which the Family Abuse EPO was issued were factually false. In fact, the plaintiff does not even attach either document to her complaint or discuss any of the statements contained therein. Moreover, Plaintiff fails to allege any facts to suggest Thompson had any involvement in the obtaining of the Family Abuse EPO.

All told, to adequately state a claim against Thompson, Plaintiff must allege more than conclusory statements of a conspiracy—she must provide plausible facts supporting her allegations that a conspiracy existed. But here, Plaintiff alleges no facts whatsoever that would support a claim for conspiracy against Thompson.

### ii. Plaintiff Fails to State A Claim Against Thompson For Unconstitutional Conspiracy to Deprive Her of Property (Count V).

In Count V of her Complaint, Plaintiff asserts that "by undertaking to have Officer Holmes obtain the key to the Marshall home so that the Marshall defendants might have free access to remove from the house what they saw fit" the defendants conspired to deprive Plaintiff of her personal property in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C.§1983. (Compl. p. 27.)

9

The pleading requirements for a §1983 conspiracy claim are discussed above. To state a §1983 conspiracy claim premised on an alleged violation of the Fourth and Fourteenth Amendments, a plaintiff must allege facts sufficient to show that a private party engaged in a conspiracy with a state actor to deprive the plaintiff of her constitutional rights to:

1. "be secure in [her] person[], house[], paper[], and effects against unreasonable searches and seizures". (U.S. Const. amend IV); or

2. "life, liberty, or property without due process of law" (U.S. Const. amend XIV §1).

A plaintiff must demonstrate "conduct which rises to the level of a constitutional deprivation." Lee X V. Casey, 771 F. Supp. 725, 732 (E.D. Va. 1991). To meet this requirement, a plaintiff must state facts to establish "intentional, deliberate[,] or arbitrary misconduct." Id. Even "injuries inflicted by governmental negligence are not addressed by the United States Constitution." Daniels v. Williams, 474 U.S. 327, 333 (1986). No such facts have been, nor could they be, pled by Plaintiff.[3]

On the contrary, the constitutionality of emergency protective orders is well established in Virginia, as in other jurisdictions. See Baird v. Baird, 99 Va. Cir. 432 (2018). Plaintiff had the right at any time to file a motion to challenge, modify, or dissolve the Family Abuse EPO and, upon filing the same, would have been granted an expedited hearing. Va. Code §16.1-253.4(c).

---

[3] The very acts complained of by Plaintiff—the vesting of exclusive possession of the Marital Residence in her husband, Watson Marshall (through his power of attorney), his retrieval of personal property located therein in which he had an ownership interest, and her temporary exclusion from the Marital Residence pursuant to a valid Family Abuse EPO—were lawful and appropriate under the circumstances. Indeed, Plaintiff pleads that Watson Marshall was a joint owner of the Marital Residence (Compl. ¶ 8) and as such, there was nothing improper with his power of attorney and/or agents retrieving personal property in which he had an ownership from the Marital Residence under any circumstances, let alone pursuant to a valid Family Abuse EPO granting Watson Marshall exclusive possession thereto.

Moreover, even if Plaintiff could somehow show that the defendants' actions violated her Fourth or Fourteenth Amendment rights, she has failed to plead factual allegations showing that the defendants conspired to engage in any intentional, deliberate, or arbitrary misconduct. Nor has she pled facts showing that there was a combination, agreement, or understanding among the defendants in which Thompson was willful participant in joint action with the state or its agents.

### iii. Plaintiff Fails to State A Claim Against Thompson For Common Law Conspiracy (Count VII).

In Virginia, "[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." Sines v. Kessler, 324 F. Supp. 3d 765, 798-99 (W.D. Va. 2018); see Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 402 (1985).

To state a claim for common law conspiracy, a plaintiff must allege that the defendants came together by agreement to achieve a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." Bull, 323 F. Supp. at 131. Accordingly, to overcome a motion to dismiss, plaintiff "must at least plead the requisite concert of action and unity of purpose 'in more than mere conclusory language.'" Bay Tobacco, LLC, 261 F. Supp. 2d at 499.

Here, Plaintiff's conspiracy claim fails to include the required elements of common law conspiracy. Plaintiff fails to state that the defendants combined to accomplish by a concerted action a criminal or unlawful purpose or another purpose by criminal or unlawful means. Nor does the Complaint state facts that defendants came together by agreement with any other defendants to achieve a "preconceived plan and unity of design and purpose." In fact, there are no allegations of fact supporting plaintiff's contention that defendant Thompson had an

11

agreement to act in concert in any way, let alone for an unlawful purpose or by unlawful means. Indeed, Thompson is mentioned in only three of the 97-paragraph Complaint.

At best, the Complaint shows that Watson Marshall, through his power of attorney, Robert Marshall, filed a criminal complaint and affidavit seeking an emergency (and later preliminary) protective order against plaintiff. As he was lawfully required to do in performing his job as a police officer, defendant T.W. Holmes then submitted the complaint and affidavit to a magistrate before whom Watson Marshall, through his power of attorney, appeared in support of the Family Abuse EPO. Once the Family Abuse EPO was lawfully issued by the magistrate, defendant Holmes properly executed the same and Watson Marshall, through his power of attorney, was granted exclusive possession of the Marital Residence and was entitled to retrieve personal property located therein. None of those facts constitutes either an unlawful purpose or criminal acts in furtherance of an unlawful purpose. Equally important, none of those facts show any conduct of any kind for any purpose or by any means by defendant Thompson. Accordingly, plaintiff has failed to state a claim for common law conspiracy against defendant Thompson.

      **B.    Plaintiff Fails to State A Claim for Intentional Infliction of Emotional Distress (Count VIII).**

To bring a claim for intentional infliction of emotional distress ("IIED"), a complaint must satisfy the following elements: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) the conduct complained of proximately caused the alleged emotional distress; and (4) such emotional distress was severe. Supervalu, Inc. v. Johnson, 276 Va. 356 (2008). Claims of IIED are disfavored in the law because of the inherent difficulties in proving claims in which injuries to the mind and/or emotions are asserted without an accompanying physical injury. Id. While Virginia state courts require a heightened pleading standard for IIED claims, this Court has previously held that a plaintiff's IIED claim must follow

the pleading requirements contained in the Federal Rules. Williams v. Agency, Inc., 997 F. Supp. 2d 409, 411 (E.D. 2014).

Accordingly, to survive, a motion to dismiss an IIED claim, a plaintiff must allege facts sufficient to show:

a. Intent of the defendant – the complaint must allege facts that show the defendant engaged in conduct for the purpose of causing the plaintiff emotional distress, or that defendant acted without regard to the risk of causing emotion distress to plaintiff where defendant knew or should have known of the risk. Id. (citing Almy v. Grisham, 273 Va. 68 (2007); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125 (2000));

b. Outrageousness – the defendant's behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Almy, 273 Va. at 78). Likewise, defendant's actions must be more than merely "insensitive and demeaning." Id. (citing Harris v. Kreutzer, 271 Va. 188, 204 (2006));

c. Causation – the defendant's outrageous actions were the actual cause of plaintiff's distress. Id.;

d. Severity – the plaintiff's emotional distress caused by defendant's outrageous actions must be so severe that no reasonable person could have expected to endure it. Id. (citing Russo v. White, 241 Va. 23, 27 (1991)). While a plaintiff in federal court need only meet the pleading requirements of Federal Rules of Civil Procedure, the emotional distress must nonetheless be severe. Perk v. Worden, 475 F. Supp. 2d 565, 571 (E.D. Va. 2007).

Applying this analysis to the Complaint, plaintiff has not stated, nor can she truthfully state, a claim against defendant Thompson for IIED.

First, the Complaint is devoid of any facts that show defendant Thompson engaged in any conduct with the intent to cause plaintiff emotional distress or otherwise acted recklessly without regard to the risk of causing emotional distress to the Plaintiff, which she knew or should have known would occur. At best, the Complaint asserts the Plaintiff suffered emotional distress because: (a) her husband Watson Marshall died; (b) Watson Marshall was granted exclusive

possession of the Marital Residence pursuant to the EPO; (c) she was unable to see Watson Marshall in the days leading up to his death because of the terms of EPO and PPO; (d) she learned of Watson Marshall's death in court; (e) she did not like the wording of Watson Marshall's obituary placed in the paper; and (f) incorrect information regarding Watson Marshall's last known address was initially provided on Watson Marshall's death certificate before it was corrected and a new certificate issued.

Of the conduct complained of by plaintiff, however, she fails to attribute any of it to Thompson. Indeed, Thompson is mentioned by name in only three paragraphs of the 97-paragraph Complaint. Moreover, there are no factual allegations in the Complaint that demonstrate defendant Thompson engaged in "outrageous" conduct. Nor does Plaintiff allege any facts to show that defendant Thompson's conduct was the actual cause of her purported emotional distress. Likewise, plaintiff cannot show that any conduct of defendant Thompson caused her extreme emotional distress so severe that no reasonable person could be expected to endure it.

In reality, Plaintiff is upset because she believes that Watson Marshall's children did not like her and that they believed and supported their father's claims that she committed elder abuse and neglect. That, however, is not a sufficient basis to support a claim for IIED and this Court should dismiss this claim with prejudice.

## **CONCLUSION**

WHEREFORE, Defendant, Brenda Marshall Thompson, by counsel, respectfully requests that the Court grant her Motion and dismiss the Complaint with prejudice and award such other and further relief as the Court deems proper.

BRENDA MARSHALL THOMPSON


By: /s/ William D. Bayliss


William D. Bayliss, Esquire
VSB No. 13741
Joseph E. Blackburn, III, Esquire
VSB No. 81871
Williams, Mullen, Clark & Dobbins, P.C.
P. O. Box 1320
Richmond, VA  23218-1320
804.420.6000
804.420.6507 (FAX)
bbayliss@williamsmullen.com
jblackburn@williamsmullen.com
   *Counsel for Brenda Marshall Thompson*


## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.


By: /s/ William D. Bayliss
William D. Bayliss, Esquire
Joseph E. Blackburn, III, Esquire
Williams, Mullen, Clark & Dobbins, P.C.
P. O. Box 1320
Richmond, VA  23218-1320
804.420.6000
804.420.6507 (FAX)
bbayliss@williamsmullen.com
jblackburn@williamsmullen.com
   *Counsel for Brenda Marshall Thompson*

43223873_2